# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHARLES E. DUNCAN,

        Petitioner,    :    Case No. 3:17-cv-430

- vs -    District Judge Walter H. Rice
    Magistrate Judge Michael R. Merz

TIMOTHY SHOOP, Warden,
  Chillicothe Correctional Institution

        :

        Respondent.

# ORDER SUBSTITUTING RESPONDENT;
# SECOND SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner Charles E. Duncan's Objections (ECF No. 10) to the Magistrate Judge's Supplemental Report and Recommendations which recommended dismissing this action on the merits ("Report," ECF No. 8). Judge Rice has recommitted the case for reconsideration in light of the Objections (ECF No. 11).

Upon Notice (ECF No. 9) from Duncan that his custody has been shifted to the Chillicothe Correctional Institution, Timothy Shoop, the Warden at that institution, is substituted as Respondent herein pursuant to Fed. R. Civ. P. 25 and the caption is amended accordingly.

Duncan raises four Objections which will be considered *seriatim*.

**Objection One:  The Transcript of the Motion to Suppress Hearing is Inaccurate**

The Report recommends deciding this case on initial review under Rule 4 of the Rules Governing § 2254 Cases without ordering the State to answer.  (ECF No. 8.)  Duncan contends he would be prejudiced by the Court's failure to consider the "entire state court record." (Objections, ECF No. 10, PageID, 49.)

Duncan has acknowledged that he previously sought habeas corpus relief in this Court (*Duncan v. Brunsman*, Case No. 3:09-cv-078)("*Duncan I*").  In that case the Court ordered a full answer and the State filed a copy of the state court record as required by Habeas Rule 5. (*Duncan I* at ECF No. 9).  Duncan argues

> The last time the Petitioner's case was before the court, the court failed to consider the video taped interrogation that was introduced as evidence during his state court trial.  Petitioner submits that the transcript alone does not accurately reflect what was said between he [sic] and the police during his custodial interrogation. Petitioner has recognized several instances where the transcript does not accurately reflect what was said between the detectives and he [sic].

(Objections, ECF No. 10, PageID 49.)  Duncan then quotes ¶¶ 20-35 from *State v. Duncan*, 2007-Ohio-4079, 2007 Ohio App. LEXIS 3720 (2nd Dist. Aug. 3, 2007), the decision of the Ohio Court of Appeals on direct appeal.  Duncan claims that ¶¶ 24 and 29 "were incorrectly transcribed in order to favor the state's position" and proposes what he believes would be a correct transcription.  (ECF No. 10, PageID 51.)  He notes that the prosecutor admitted in the suppression hearing that parts of the audio were missing.  *Id.*  He asserts this Court "should at least consider the video."

These arguments are in support of his claim that he was deprived of his right to counsel and privilege against self-incrimination when he requested counsel before being interrogated, was not given access to counsel, and then had his statements to the police used against him at trial (Petition in *Duncan I* at ECF No. 2, PageID 35-36, 45-48; Petition in this case, ECF No. 3, PageID 24-25).

On his direct appeal to the Second District, Duncan claimed his waiver of *Miranda* rights was not voluntary and had been revoked before he made statements to the police. The Second District held:

> [*P12] The standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Vance* (1994), 98 Ohio App.3d 56, 58-59, 647 N.E.2d 851; *State v. Ferguson,* Defiance App. No. 4-01-34, 2002 Ohio 1763. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. However, an appellate court makes an independent determination of the law as applied to the facts. *Vance*, 98 Ohio App.3d at 59.
>
> [*P13] In its findings of facts, the trial court found that "the defendant unequivocally invoked his right to an attorney prior to the [first] interview * * * [and] the detectives immediately ceased questioning and returned the defendant to the holding cell." The trial court further found that prior to the second interview, "which the defendant was responsible for initiating * * * he * * * signed a waiver form after being re-advised of his rights." Finally, the trial court found that after this waiver, "the defendant was not clear that he wanted an attorney present prior to making a statement. He simply began making a statement without counsel."
>
> [*P14] A review of the record confirms that there is sufficient competent credible evidence from which the trial court could make these findings of fact.

*State v. Duncan,* 2007-Ohio-4079. Turning to Duncan's second assignment of error about his revoking his *Miranda* waiver, the court held:

> [*P18] Second, Duncan asserts that, after he executed the waiver of his *Miranda* rights, he thereafter again unequivocally manifested a desire to have a lawyer present before making his statement. This claim is however belied by the tape-recorded interview.
>
> [*P19] Duncan focuses on the a colloquy between himself and Detective Estep where in response to Estep's question whether Duncan wanted to now talk to them without a lawyer, Duncan answered: "no. I want a lawyer first * * *." However, in considering this evidence, we must look at the entire conversation and what occurred thereafter. After Detectives DeWine and Estep gave Duncan his rights and he signed the waiver form, the following conversation occurred:

*Id.* The decision then recites verbatim the conversation between Duncan and Detective Estep as found by the court of appeals, including ¶¶ 24 and 29 that Duncan claims were intentionally mistranscribed to favor the State's interpretation. *Id.*

Findings of fact by the state courts in cases later brought to habeas review are presumed to be correct. The presumption of correctness in 28 U.S.C. § 2254(e)(1) extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981), which shows the presumption was in place long before the AEDPA was adopted. *Sumner*, *supra*. Such findings include the contents of the state court record, explicit factual findings of the state court, and inferences fairly deducible from these facts; they are not to be set aside unless they lack even "fair support" in the record. *Marshall v. Lonberger*, 459 U.S. 422 (1983).

In this case the state court trial judge had the video record available at the suppression hearing.[1] (*Duncan I*, ECF No. 9-26, PageID 267.) Having heard the evidence, the trial judge

---

[1] Live testimony could not be taken from Detective Estep because he had retried and was in Iraq training Iraqi police

found

> After he signed the waiver form, he ambiguously stated, "I want an attorney but I want to make a statement." "After a knowing and voluntary waiver of *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452 (1994). The Court finds that the defendant was not clear that he wanted an attorney present prior to making a statement. He simply began making a statement without counsel. Furthermore, the defendant knew, based upon what had transpired earlier, that if he clearly requested an attorney, the detectives would have ceased all questioning.

(*Duncan I*, ECF No. 9-4, PageID 105.)

At the suppression hearing, the prosecutor represented that, although the video record was "a two-hour tape," there was no audio recording until the last fifteen to twenty minutes. (*Duncan I,* ECF No. 9-26, PageID 275.) The audio-recorded portion of the tape was played in the hearing and the court reporter stenotyped[2] what was heard while it was being played. *Id.* at PageID 279-314. The portion that Duncan claims was inaccurately transcribed is at PageID 282-83. The reporter later swore, in the standard certificate made with court trranscripts, that she was a registered professional court reporter and had faithfully transcribed what she had recorded in stenotypy "into typewriting by means of a computer." *Id.* at PageID 354. Where the words of one or the other participant in the interview were inaudible, she typed the word "inaudible." The reporter also swore that she was not employed by either of the attorneys and had no interest in the outcome of the case. *Id.*

Duncan now claims that his statement transcribed at *Duncan I*. ECF No. 9-26,PageID 282

---

at the time.

[2] Machine stenotypy is a commonly-used method of recording testimony by court reporters, at least over the last fifty years. It is a faster method of recording testimony than shorthand it replaced. In the hands of a skilled court reporter, it is a more accurate method of recording live testimony than electromechanical devices because of the ability of a reporter to see the witness while listening. For the testimony in controversy in this case, that observation does not apply because the reporter was recording from the audio record of the interview.

as "No. I want a lawyer first, but I want to make a statement. Well, never mind. There ain't nothing going to help me now" had missing dialogue between "statement" and "well" which would show that the "never mind" applied to the statement, not to the lawyer. (Objections, ECF No. 10, PageID 51.) However, the court reporter did not indicate there was any inaudible portion at that point, although she did two lines later. During his testimony at the motion to suppress hearing, Duncan did not testify to the content of any missing dialogue between those two words or even that there was a gap.

The second inaccuracy Duncan claims is several lines later. The transcript reads "Detective Estep: But you're – you've already messed us all up again. You said you wanted a lawyer anymore. I – I don't know what you want." (*Duncan I*, ECF No. 9-26, PageID 283.) Duncan now claims it should read: "But you're – you've already messed us all up again. You said you wanted a lawyer. Anymore, I don't know what you want." (Objections, ECF No. 10, PageID 51.) That is, he is not claiming the words are wrong or in the wrong order, but punctuation is wrong. At that point, however, in a portion Duncan does not claim is inaccurate, he did not say he wanted a lawyer, but rather "I want to make a statement." (*Duncan I*, ECF No. 9-26, PageID 283.)

The *Miranda* waiver was the principal focus of the appeal and this portion of the transcript was key to the decision of the appeal. Yet nowhere in his Brief on appeal does Duncan suggest the tape had been incorrectly transcribed (See *Duncan I*, ECF No. 9-8). Since 1971 the Ohio Rules of Appellate Procedure have provided a method of correcting the record on appeal if it is inaccurate. Ohio R. App. P. 9(E) reads:

> **(E) Correction or modification of the record.**
>
> If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to

> and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

The record in *Duncan I* is devoid of any suggestion that there had been a mistranscription, much less one done intentionally to favor the State. There was apparently no effort to correct the record nor any claim in Appellant's Brief that the transcription was wrong.

Duncan thus forfeited the opportunity provided by Ohio law to have the record corrected as he now claims it should be. He cannot now ask this habeas corpus court to listen to the recording and see if it hears something different from what the court reporter recorded. Duncan's first objection is without merit.

**Objection Two: Continuing Custody**

Because the judgment of which Duncan complained in his Petition was recently vacated by the Second District[3], the Magistrate Judge initially believed Duncan had to wait until a new sentence was imposed and then exhaust his state court remedies (Report, ECF No. 4, PageID 31). In his Objections to that Report, Duncan persuaded the Magistrate Judge that he had already

---

[3] "The Judgment Entry from which Duncan seeks relief was entered October 27, 2016 (ECF No. 3, PageID 28). Duncan appealed from that judgment to the Second District Court of Appeals. The amended judgment had resulted from a motion to vacate a void judgment, but on appeal the Second District held the amended judgment was itself void because the trial judge had exceeded his sentencing authority. This rendered the sentence void. *State v. Duncan*, 2017-Ohio-8103, 2017 Ohio App. LEXIS 4456 (2nd Dist. Oct. 6, 2017). The Second District therefore remanded the case for resentencing. *Id.*" (Report, ECF No. 4, PageID 31.)

exhausted his remedies as to his grounds for relief because of the appeals reflected in *Duncan I* and the impact of *State v. Fischer*, 128 Ohio St. 3d 92 (2009), on the possibility he could again receive merits review (Supplemental Report, ECF No. 8, PageID 42).

Duncan objects to the conclusion in the Supplemental Report which may seem to imply that Duncan is not sufficiently in custody to invoke habeas corpus jurisdiction. No such implication was intended. Perhaps the correct expression would be that Duncan remains in prison and thus in state custody pursuant to the portions of his original sentence that have not been vacated.

**Objection Three: Impact of the Decision in *Duncan I***

The two Grounds for Relief Duncan raises here were before this Court in *Duncan I* and decided against Duncan on the merits on the Magistrate Judge's recommendation and Judge Rice's Order (*Duncan I*, ECF No. 25). This Court granted Duncan a certificate of appealability on those two grounds, so he was able to obtain a decision on the merits, albeit unfavorable, from the Sixth Circuit Court of Appeals. *Duncan v. Warden,* Case No. 10- 3468 (6th Cir. July 6, 2012)(unreported; copy at *Duncan I*, ECF No. 31).

As explained in the Supplemental Report, although *res judicata* does not technically apply in habeas corpus to bar relitigation; the Magistrate Judge concludes *stare decisis* "dictates the results," to wit, that Duncan's claims are without merit. The Magistrate Judge concluded

> Nothing has changed to make the Second District's decision in this case less objectively reasonable than it was when this Court and the Sixth Circuit reviewed it before. In particular, there have been no decisions of the Supreme Court changing the applicable law and declared to be applicable to cases on collateral review.

(Supplemental Report, ECF No. 8, PageID 45.)

Duncan objects "*res judicata*, *stare decisis*, and the law of the case doctrine do not apply

8

in habeas cases." (Objections, ECF No. 10, PageID 51-52, citing *King v. Morgan,* 807 F 3d 154, 160 (6th Cir. 2015 ); *Rosales-Garcia v. Holland,* 322 F.3d 386 (6th Cir. 2003 ); and *Johnson v. Champion,* 288 F.3d 1215 (6th Cir. 2002). The Supplemental Report specifically disclaimed any applicability of *res judicata* and did not mention law of the case doctrine. The three cited cases nowhere mention *stare decisis*.

The Sixth Circuit has recently written, "[i]f it is important for courts to treat like matters alike in different cases, it is indispensable that they 'treat the same litigants in the same case the same way throughout the same dispute.'" *United States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016)(Sutton, J.), quoting Bryan A. Garner, et al., The Law of Judicial Precedent 441 (2016). The state courts, this Magistrate Judge, Judge Rice, and the Sixth Circuit have all decided the claims Duncan makes here on the merits.

To persuade us to change our evaluation of the case, Duncan asserts that "the state court's adjudication of Petitioner's claim is both contrary to and an unreasonable application of clearly established Supreme Court precedent." (Objections, ECF No. 10, PageID 52.) Duncan then quotes the Second District decision at length and opines that "[o]ne need look no further than *Miranda* itself to see that the Ohio Court of Appeals' adjudication is both contrary to and an unreasonable application of clearly established federal law." *Id.* at PageID 54.

All courts to consider the matter found the record to be clear that after Duncan was arrested and asked for a lawyer, the interrogation stopped and Duncan was left alone, undoubtedly in custody, for the better part of two hours. Conversation between Duncan and the police resumed only after the police informed him that the victim had died.

Duncan claims that this Court and the Sixth Circuit failed to address Detective Estep's statement which was, interpreted as Duncan now insists is appropriate with different punctuation,

9

"But you're you've already messed us all up again. You said you wanted a lawyer. Anymore, I –I don't know what you want." The very next words out of Duncan's mouth are "I can't even believe I'm-I'm just sitting here talking to you guys. We were a loving family earlier today[4]. And now all this shit happened, and she's gone. I don't-I want to make a statement." The Second District did deal with this colloquy. Having quoted that portion of the Second District's decision, the Report in *Duncan I* found

> As a matter of law, the rights to remain entirely silent and to counsel before any questioning by the police are clearly established in Supreme Court precedent. *Miranda v. Arizona*, 384 U.S. 436 (1966). However, if a suspect initiates the conversation even after invoking his right to counsel by demonstrating a generalized desire to discuss the investigation, he has waived those two rights. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983).

(*Duncan I*, ECF No. 19, PageID 1064-65). Thus the Second District, this Court, and the Sixth Circuit did consider Estep's statement, but did not put upon it the interpretation Duncan wants.

In a section labeled "Harmful Error Analysis," Duncan argues that the whole case was about his credibility and how the prosecution used inconsistencies between his statement to the police about how the shooting happened and "hard physical evidence." (Objections, ECF No. 10, PageID 56-57.) The Supplemental Report nowhere suggested that admission of the statement made to the police was unconstitutional but the error was harmless. In other words, harmless error analysis does not enter into the case; Duncan's statement to the police was undoubtedly very important to the prosecution's case.

*Stare decisis* is based on the principle that like cases should be decided alike. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). On that basis, a prior decision on the merits about a

---

[4] The victim was Duncan's live-in girlfriend of a number of years who was the mother of his child.

controversy should be adhered to unless the party seeking a change persuades the Court it made a serious mistake or the governing law has changed. Neither of those factors applies here.

**Objection Four: Certificate of Appealability**

The Supplemental Report recommended that Duncan be denied a certificate of appealability because reasonable jurists would not debate that the Petition should be dismissed for the reasons given. Duncan objects in conclusory fashion, but gives no basis for believing any reasonable jurist would reach a different conclusion.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 30, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).